**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARY WIGGINS, | ) |
| | ) No. 12 CV 9384 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) May 18, 2015 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Mary Wiggins applied for disability insurance benefits ("DIB") based on her claim that back pain stemming from osteoarthritis combined with other impairments render her unable to work. After an administrative law judge ("ALJ") denied her application and the Appeals Council declined her request for review, Wiggins filed the current lawsuit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, Wiggins's motion for summary judgment is granted, the government's motion is denied, and the case is remanded for further proceedings consistent with this opinion:

**Procedural History**

In November 2009 Wiggins filed an application for a period of disability and DIB, claiming a disability onset date of August 31, 2008. (Administrative Record "A.R." 149.) After her claim was denied initially and upon reconsideration, (id. at

80-81), Wiggins requested and was granted a hearing before an ALJ. That hearing took place on December 14, 2011. (Id. at 31-79.) On January 13, 2012, the assigned ALJ denied Wiggins's application. (Id. at 25.) The Appeals Council declined review, (id. at 1-4), making the ALJ's decision the final decision of the Commissioner of the Social Security Administration, *see Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Wiggins then filed this lawsuit seeking judicial review of the Commissioner's decision, *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 11).

## Facts

In 1978, when Wiggins was in her 30's, she was injured in a car accident, leaving her with a seizure disorder. (A.R. 305.) Despite her injury, and with the help of anti-seizure medications, Wiggins was able to go on to work as a telemarketer, a housekeeper, and as an employee at a direct mail services company. Although her seizure disorder has been well managed, Wiggins claims that in August 2008 she began experiencing back pain linked to osteoarthritis that left her unable to perform any of her previous jobs. Accordingly, she argues that she is disabled under Rule 202.04 or 202.06 of the Medical-Vocational Guidelines. (R. 21, Pl.'s Br. at 11-12); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202. At her hearing before an ALJ, she submitted both documentary and testimonial evidence in support of her claim.

## A.     Medical Evidence

In August 2008 Wiggins reported to an emergency room complaining of sharp pain in her mid-back.  (A.R. 264-69.)  X-rays showed degenerative joint disease in her spine.  (Id. at 266.)  She was next seen by a doctor when she returned to an emergency room in October 2009 complaining of back and hip pain.  (Id. at 274.)  She was discharged in good condition with a prescription for pain medication.  (Id. at 275-76.)  Wiggins reported to an emergency room again a month later, complaining of pain in her back and right leg.  (Id. at 278.)  Again she was discharged in good condition with prescriptions for pain medications.  (Id. at 279-80.)

The following year, on March 10, 2010, Wiggins underwent a physical examination with consulting physician Dr. Dinesh Jain.  (Id. at 316-18.)  Wiggins told Dr. Jain that when she has back pain, its intensity is a six out of ten.  (Id. at 316.)  Dr. Jain reported that Wiggins exhibited a normal range of motion in her upper and lower extremities, the ability to walk without an assistive device, no trouble getting on or off the examination table, negative straight-leg tests, and no problems tandem walking, squatting and rising, or hopping.  (Id. at 317-18.)  He also reported that the range of motion in Wiggins's lumbar spine was normal and that there were no clinical signs of neuropathy in her lower extremities.  (Id. at 318.)

In March 2010 Wiggins began treating with Dr. Catherine Lindsay, who monitored her hypothyroidism and periodic reports of back pain.  (Id. at 320.)

During their first visit Wiggins reported having back pain associated with rigidity in the morning, but said that taking ibuprofen twice a week reduced her pain. (Id.) At a visit two months later Wiggins said that her low back pain "improves 100%" with daily ibuprofen. (Id. at 322.) She also reported experiencing right shoulder pain once a month. (Id.) Dr. Lindsay offered to give Wiggins an injection to relieve her pain, but Wiggins declined. (Id. at 323.) In June 2010 Wiggins again reported pain but said it improved when she took Tylenol. (Id. at 324.) Three months later she told Dr. Lindsay that her shoulder pain cropped up twice a week but that she was not taking any pain medication to treat it. (Id. at 330.) Dr. Lindsay advised her to take ibuprofen. (Id. at 331.)

Seven days later, Dr. Lindsay completed a residual functional capacity ("RFC") form for Wiggins opining that she can stand continuously for no more than 30 minutes, sit continuously for no more than two hours, and walk no more than one block. (Id. at 332-34.) Dr. Lindsay further opined on the RFC form that Wiggins can alternate between sitting and standing on a regular basis throughout an eight-hour day, but that she is limited to lifting or carrying no more than ten pounds. (Id. at 333-34.) Dr. Lindsay also wrote that Wiggins's complaints are credible and that she has moderate pain stemming from osteoarthritis. (Id. at 335.)

The medical record includes three additional RFC assessments: two from consulting physicians and one from a medical expert the ALJ consulted a month before Wiggins's hearing. In December 2010, consulting physician Dr. Reynaldo Gotanco reviewed Wiggins's records and opined that she has the RFC for a full

range of light work except that she should avoid concentrated exposure to hazards. (Id. at 352-55.) Two weeks later, consulting physician Dr. Jack Kundin reviewed Dr. Gotanco's opinion and agreed with his RFC, except that he added limitations precluding Wiggins from using ropes, scaffolds, or ladders, or from exposure to noise over 85 decibels without ear protection to address Wiggins's complaint of some hearing loss. (Id. at 361.) In November 2011, a month before Wiggins's hearing, medical expert Dr. Shelden Slodki opined that Wiggins retains the RFC for light work but that she should never climb ladders or scaffolds. (Id. at 366-69.) He also opined that she should never be exposed to unprotected heights or moving mechanical parts, and that she is precluded from operating a motor vehicle. (Id. at 370.) Dr. Slodki explained that Wiggins's low back pain is mild and that there is no longitudinal record to suggest that it or her right shoulder pain is of disabling severity. (Id. at 374.)

**B.      Wiggins's Hearing Testimony**

Wiggins testified in December 2011 that she stopped working in 2008 because she was diagnosed with osteoarthritis and was no longer able to handle the walking and lifting requirements of her housekeeping job. (A.R. 38-39.) She said that she only takes pain medication when she needs it, which is about once a week. (Id. at 42.) Later she testified that she takes aspirin "at least twice a week" and Tylenol only about once a month. (Id. at 54.) She said those medications ease her back pain. (Id. at 55.) In describing her daily activities Wiggins said that on a typical day she prepares her husband's breakfast, washes dishes, and then spends

the day sitting on the couch.  (Id. at 60.)  Wiggins said that she sits for about half an hour but then gets up to move around to keep her back loose.  (Id. at 61.)

When asked about her work history, Wiggins testified that she worked as a telemarketer "for about five months" from 1999 until May or June 2000.  (Id. at 67.) She did not remember how much money she made on a monthly basis and said that she stopped that job because she was not meeting her quota.  (Id. at 68.)  In describing her work for a direct mailing company, she said her job was to make sure that the merchandise being mailed met U.S. mailing standards.  (Id. at 69.)  As part of that job she sometimes filled in for people who usually ran the mail addressing machine.  (Id.)

## C.    Vocational Expert's Hearing Testimony

A vocational expert ("VE") also testified at the hearing, providing testimony regarding the nature of Wiggins's previous jobs.  In describing her work at the direct mailing company, the VE testified that the closest job in the Dictionary of Occupational Titles ("DOT") is addressing machine operator, which deals with operating the machine but not quality control.  (A.R. 70.)  That job is listed as semi-skilled, light work.  (Id.)  The VE testified that Wiggins's position as a housekeeper in a nursing home is performed at the medium level, and her work as a telemarketer is a sedentary job.  (Id. at 71.)  The ALJ then posed a series of hypotheticals to the VE regarding whether someone with specific hypothetical RFCs could perform Wiggins's past work.  First the ALJ described a person who can perform light work with no climbing and no exposure to hazards or noise above 85

decibels without ear protection.  (Id.)  The VE testified that such a person could perform the telemarketer position as she performed it and as it is generally performed, and the addressing machine operator position as generally performed.  (Id. at 71-72.)  The VE gave the same answer when the ALJ added a restriction against operating a motor vehicle.  (Id. at 72.)  When the ALJ posed a hypothetical regarding a person who can sit for only 2 hours at a time, stand for 30 minutes at a time, and walk one block at a time, the VE testified that such a person could still perform the telemarketer position as Wiggins performed it and as it is generally performed.  (Id. at 73.)  When asked whether a person with an RFC for light work who could use the phone only occasionally could perform Wiggins's past work, the VE testified that the telemarketer position would be ruled out.  (Id. at 73-74.)

**D.     The ALJ's Decision**

On January 13, 2012, the ALJ issued a decision finding that Wiggins was not entitled to DIB.  (A.R. 25.)  In applying the standard five-step sequence for assessing disability, *see* 20 C.F.R. § 404.1520(a)(4); *Schomas*, 732 F.3d at 706-07, the ALJ found at step one that Wiggins had not engaged in any substantial gainful activity between her alleged disability onset date, August 31, 2008, and her date last insured, June 30, 2011.  (Id. at 20.)  At step two the ALJ found that Wiggins has severe impairments in the form of a seizure disorder, osteoarthritis of the lumbar spine, obesity, and hearing loss.  (Id.)  At step three the ALJ found that none of those impairments are of listings-level severity.  (Id. at 21.)  Before turning to step four, the ALJ determined that Wiggins has the RFC to perform light work

except that she can never climb ladders, ropes, or scaffolds, cannot be exposed to dangerous moving machinery or unprotected heights, and can have no exposure to noise above 85 decibels without ear protection.  (Id.)  Turning to step four, the ALJ concluded that Wiggins's RFC would allow her to perform her past relevant work as a telemarketer or as an addressing machine operator.  (Id. at 25.)  Accordingly, the ALJ concluded that Wiggins was not entitled to DIB.  (Id.)

## Analysis

Wiggins raises two primary arguments in challenging the ALJ's decision. First, she argues that the ALJ erred in concluding that she can return to her past relevant work.  Specifically, she argues that the ALJ erroneously determined that her job at the direct mailing company is the equivalent of the addressing machine operator job and that her telemarketer job qualifies as past relevant work.  Second, she argues that the ALJ committed reversible error in discounting Dr. Lindsay's RFC opinion.  This court reviews the ALJ's decision only to ensure that it is free of legal error and supported by substantial evidence.  *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  "Evidence is substantial if a reasonable person would accept it as sufficient to support the decision."  *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011).  This court's role is not to reweigh the evidence or substitute its own judgment for the ALJ's, but rather to ensure that the ALJ constructed a logical bridge between the evidence and his conclusions.  *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## A.    Treating Physician's Opinion

Because Wiggins's ability to return to her past relevant work comes into play only if the ALJ's RFC determination is supported by substantial evidence, the court begins with Wiggins's second argument that the ALJ committed reversible error in discounting Dr. Lindsay's RFC opinion. As described above, Dr. Lindsay filled out an RFC form stating that Wiggins is able to stand continuously for 30 minutes, sit continuously for two hours, and can alternate between sitting and standing "on a regular basis" during an eight-hour work day. (A.R. 333.) Dr. Lindsay also wrote that Wiggins can walk only a block without stopping and that she can lift and carry five to ten pounds. (Id. at 334.) The ALJ considered Dr. Lindsay's opinion but gave it little weight, writing that the opinion "is not supported by objective findings, or the claimant's testimony regarding the favorable effect of medications." (Id. at 24.) The ALJ also noted that the limitations conveyed in Dr. Lindsay's RFC form appeared to be based on Wiggins's subjective reports and that Dr. Lindsay rendered "a sympathetic opinion." (Id.) Wiggins argues that the ALJ erred in discounting Dr. Lindsay's opinion because, according to her, that opinion was not that different from the opinions of the consulting physician and medical expert who found her limited to light work and because she sees no support for the notion that Dr. Lindsay was overly sympathetic to Wiggins's claim. (R. 21, Pl.'s Br. at 14.)

Under the relevant regulations, a treating physician's medical opinion is entitled to controlling weight if it is well supported and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Where the treating physician's opinion is

not entitled to controlling weight, the ALJ must still decide how much weight to afford it based on a number of factors including the nature of the treating relationship, the supportability of the opinion, and the consistency between the opinion and the medical record. *See* 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. An ALJ may discount a treating physician's opinion if it "is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

At the outset, Wiggins argues that the ALJ was unfairly dismissive given what she describes as the similarity between Dr. Lindsay's opinion and those given by Drs. Slodki and Gotanco. But that argument rests on a faulty premise. Dr. Lindsay wrote that Wiggins can only walk for a block without stopping. (A.R. 334.) Drs. Slodki and Gotanco opined that she can walk for six hours out of an eight-hour day. (Id. at 352, 367.) And although Wiggins characterizes Dr. Lindsay's RFC opinion as endorsing her for light work, that endorsement does not appear on the face of the form. Rather, Dr. Lindsay opined that Wiggins can stand continuously for only 30 minutes and lift and carry only five to ten pounds. To be capable of light work, a claimant must be able to do a good deal of walking and standing, quantified at approximately six hours out of an eight-hour day, and must be capable of lifting up to 20 pounds. 20 C.F.R. § 404.1567(b); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The restrictions Dr. Lindsay listed in her RFC form are not consistent with those requirements. Accordingly, this court's review of

the three RFC opinions suggests that the gulf between Dr. Lindsay's opinion and those of Drs. Slodki and Gotanco is wider than Wiggins's characterization presupposes.

Regardless whether Wiggins's comparison of the three RFCs is apt, the bottom line is that the ALJ gave several supported reasons for discounting Dr. Lindsay's opinion. In particular, the ALJ reasoned that the limitations Dr. Lindsay ascribed to Wiggins are not supported by the objective evidence and conflict with Wiggins's own statements that medication relieved her pain. (A.R. 24.) As the ALJ explained in the discussion of Wiggins's treatment history, Dr. Lindsay treated Wiggins's complaints of back pain by prescribing ibuprofen, she never ordered in-depth testing or recommended physical therapy or surgery, and her examination findings were normal. (Id. at 22.) The ALJ recognized that the objective evidence from the consulting examiner confirmed those findings, noting his observation that Wiggins's gait, range of motion, straight-leg raise tests, tandem walking, and other measures of back limitations were all normal. (Id.) Wiggins does not dispute that she both reported to Dr. Lindsay and testified at her hearing that medications relieved her pain. (Id. at 54-55, 320, 322, 324.) The ALJ was entitled to rely on this discrepancy between Wiggins's testimony, the objective medical evidence, and Dr. Lindsay's opinion in weighing her RFC opinion. *See Ketelboeter*, 550 F.3d at 625.

Moreover, the mismatch between Dr. Lindsay's RFC report and her treatment notes reasonably pointed the ALJ to the conclusion that Dr. Lindsay

based her opinion on Wiggins's self-reports. An ALJ is entitled to discount a treating physician's opinion when it is based solely on the claimant's subjective complaints. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). And because the ALJ could not identify a link between Dr. Lindsay's treatment notes and her RFC findings, it was not illogical for the ALJ to conclude that the RFC form reflects a "sympathetic opinion." (Id. at 24.) As the Seventh Circuit has recognized, sympathy may incline a treating physician to go out of her way to help a patient obtain disability benefits. *See Ketelboeter*, 550 F.3d at 625 (noting that a treating physician may "be unreliable if the doctor is sympathetic with the patient and thus too quickly finds disability" (internal quotation omitted)); *Hofslein v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). Even if the ALJ should have provided more detail to explain why Dr. Lindsay's opinion appeared overly sympathetic, *see Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015), because the ALJ's other reasons for discounting Dr. Lindsay's RFC go straight to the heart of the supportability and consistency of her opinion, *see* 20 C.F.R. § 404.1527(c), and because those reasons are supported by the record, this court finds no error in the ALJ's decision to give her RFC little weight.

## B.     The ALJ's Step-Four Determination

Wiggins also argues that the ALJ committed reversible error in concluding that she can return to her past relevant work because, she says, the ALJ mischaracterized the nature of her previous work as a telemarketer and as an employee at a direct mailing company. At the fourth step of the disability

evaluation process, the claimant bears the burden of demonstrating that she is unable to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Past relevant work is defined as work that the claimant performed within the previous 15 years, that qualified as substantial gainful activity, and that lasted long enough for the claimant "to learn to do it." 20 C.F.R. § 404.1560(b)(1). As a general matter, a claimant will not be found disabled if she has the RFC to perform her past relevant work as she actually performed it or as it is generally performed in the national economy. *Id.* § 404.1520(b)(2); *see also Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). Wiggins argues that what she characterizes as the ALJ's errors in identifying her past relevant work are particularly harmful because if the ALJ had gotten beyond step four, then given her age, education, and occupational background, she would be entitled to benefits under the Medical-Vocational Guidelines.

### 1. The Direct Mailing Company Position

Wiggins challenges the ALJ's determination that Wiggins's past relevant work includes the job "addressing machine operator" and the conclusion that Wiggins can return to this work as it is generally performed in the national economy. (A.R. 25.) Wiggins argues that the addressing machine operator title does not accurately describe her job at the direct mailing company, because, she says, that job actually is a composite job comprised of both the addressing machine operator position and a quality control position. Composite jobs are those which "have significant elements of two or more occupations and, as such, have no

counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2   Where a claimant's past relevant work consists of a composite job, the ALJ must evaluate the particular facts of an individual case. *Id.* Because by definition a composite job will have no DOT counterpart, the ALJ may rely on evidence provided by a VE to explain the nature of the claimant's past relevant work. *Id.*   But where a VE relies only on the DOT as a source of information supporting his opinion, then his information is considered no better than the DOT in identifying the claimant's past work. *Lipke v. Astrue*, 575 F. Supp. 2d 970, 983 (W.D. Wis. 2007).   "Picking out the line" of how to define a claimant's past relevant work is "a task for the agency, subject to light judicial review." *Smith*, 388 F.3d at 253.

How to apply "light judicial review" to the question whether an ALJ erred in failing to classify a claimant's past relevant work as a composite job is an undertaking that lacks clear parameters. *See Barnett v. Colvin*, No. 13-CV-781-CJP, 2014 WL 7450077, at *7 (S.D. Ill. Dec. 30, 2014) (noting lack of Seventh Circuit cases regarding composite job issue).   Of the district court cases in this Circuit to have wrestled with the question, some courts, including this court, have affirmed an ALJ's description of past relevant work where the claimant does not raise the composite job issue before the ALJ, does not identify what distinct jobs comprise her composite job, or fails during the hearing to probe a VE's description of her past job. *See, e.g., Polchow v. Astrue*, No. 10 CV 6526, 2011 WL 1900065, at *20 (N.D. Ill. May 19, 2011) (Kim, J.); *Teskey v. Astrue*, No. 1:10-cv-00758-JMS-MJD, 2011 WL 1636924, at *7 (S.D. Ind. Apr. 29, 2011); *Magee v. Astrue*, No. 1:07-cv-

0438-DFH-TAB, 2008 WL 1836687, at *6 (S.D. Ind. Apr. 23, 2008). But other courts have remanded even where the question of a composite job does not necessarily arise explicitly during a hearing, in circumstances where the claimant's or the VE's testimony should have alerted the ALJ that the claimant's past work is made up of more than one job. *See, e.g., Cabaniss v. Colvin*, No. 13 CV 4244, 2014 WL 7450435, at *12 (N.D. Ill. Dec. 30, 2014); *Barnett*, 2014 WL 7450077, at *6-*7; *Lipke*, 575 F. Supp. 2d at 982-83.

Here, neither Wiggins nor her attorney explicitly referenced the composite job idea during her hearing, but the ALJ was aware that the DOT does not neatly cover her past work at the direct mailing company. In the disability reports Wiggins filled out in support of her claim, she gave this job two different labels, including "quality clerk," (A.R. 189), and "machine operator," (id. at 243). When pressed by the VE for details at the hearing, Wiggins explained that her job was to make sure that the merchandise the company was mailing met U.S. mailing standards and that she sometimes had to fill in for people who ran the machines that sealed envelopes and affixed bar codes. (Id. at 68-69.) The VE then told the ALJ that the closest job to Wiggins's description in the DOT is "addressing machine operator," a role that involves operating a mail machine but does not include quality control. (Id. at 70.) The VE testified that her RFC for light work is inconsistent with the job as Wiggins actually performed it because she said she occasionally had to lift 40 pounds. (Id. at 68-72.) In the hearing decision the ALJ did not provide any analysis to explain why he determined that Wiggins's past relevant work is

accurately encompassed by the DOT's entry for "addressing machine operator," instead simply stating that the VE testified that she could perform the addressing machine operator position as generally performed. (Id. at 25.)

Based on the VE's testimony, the ALJ should have been alerted to the conflict between the DOT description of "addressing machine operator" and the direct mailing job that Wiggins actually performed. Most notably, Wiggins testified that her job was to ensure compliance with mailing standards and to only "fill in" for the machine operators. (Id. at 69.) The VE acknowledged that the DOT job he cited incorporates only the machine operating function and does not involve quality control. (Id. at 70.) Where there is an obvious or apparent conflict between the DOT and the VE's testimony, the ALJ is obliged to resolve it regardless of whether the claimant's attorney raises the issue. *See* SSR 00-4p, 2000 WL 1898704, at \*4 (2000); *Weatherbee*, 649 F.3d at 570; *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Here, despite the VE's testimony that the job he identified did not include the quality control aspects of Wiggins's previous job, the ALJ never grappled with the mismatch, either during the hearing or in the written decision. The government admits that Wiggins is unable to return to her direct mailing job as she actually performed it, but argues that because the addressing machine operator job "actually requires less strenuous work" than the job she performed, any argument that she cannot perform the job as generally performed in the national economy "lacks merit." (R. 24, Govt.'s Br. at 7.) But that assertion flies in the face of the rule that an ALJ may not take a composite job, divide it into its two component jobs, and find

that the claimant can return to the less strenuous of the two.  *See Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985); *Peterson v. Astrue*, No. 1:09-CV-00209, 2010 WL 3219293, at *7 (N.D. Ind. Aug. 12, 2010); *Garcia v. Astrue*, No. 12 CV 4191, 2013 WL 3321509, at *11 (N.D. Ill. June 28, 2013).

At the end of the day, it is not the court's job to decide how to draw the line between a composite and a non-composite job.  *See Oskey v. Colvin*, No. 1:13-CV-290-JVB-RBC, 2015 WL 629005, at *6 (N.D. Ind. Feb. 12, 2015).  Here, the ALJ side-stepped the obligation to "make factual findings that support his conclusion" regarding the nature of Wiggins's past relevant work.  *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).  Without those findings, the court is unable to determine whether the DOT entry for "addressing machine operator" accurately describes Wiggins's past relevant work.  On remand, the ALJ should develop the record regarding Wiggins's job at the direct mailing company and determine whether the quality control duties coupled with the machine operating functions make it a composite job.  If so, "the ALJ should not evaluate it . . . as generally performed in the national economy."  *See Garcia*, 2013 WL 3321509, at *11 (internal quotations and citations omitted).

### 2.     The Telemarketer Position

The ALJ's failure to clarify his finding that Wiggins's past relevant work is that of an addressing machine operator might be harmless if he correctly determined that Wiggins could return to her past relevant work as a telemarketer. *See Getch*, 539 F.3d at 481.  But here the ALJ failed to resolve conflicting evidence

regarding whether her telemarketer job fills the criteria for past relevant work, casting doubt on the accuracy of this aspect of the step-four ruling. Wiggins argues that her telemarketer job does not meet the criteria for past relevant work, either because she did not earn enough money for the job to amount to substantial gainful activity or because it qualifies as an unsuccessful work attempt. Past employment can be considered past relevant work at step four only if it amounts to substantial gainful activity, which is defined as significant physical or mental activities that the claimant does for pay or profit. 20 C.F.R. §§ 404.1560(b)(1), 404.1572(a), (b). Whether employment amounts to substantial gainful activity turns in part on whether the claimant's average monthly earnings exceed the SSA's SGA Earnings Guidelines. 20 C.F.R. § 404.1574(b); SSR 83-35, 1983 WL 31257, at *1 (1983).

Wiggins argues that the ALJ erred in including her work as a telemarketer at step four because, she says, she did not earn enough income on this job to amount to substantial gainful activity under the SGA Earnings Guidelines. Her argument is muddied, however, by her failure to provide consistent information regarding the dates she performed that job. Her SSA earnings record shows only that she was employed as a telemarketer in 1999 and 2000. (A.R. 167.) In the work history reports Wiggins completed in support of her DIB application she listed the pertinent dates alternately as "06/00-07/00," (id. at 189), "from 2000 to 2000," (id. at 241, 243), and "from 1999 to 07/2000." (Id. at 249.) At her hearing, she testified that she worked as a telemarketer "for about five months" from 1999 until May or June 2000. (Id. at 67.) She submitted a letter from a co-worker who wrote that Wiggins

worked as a telemarketer from December 1999 through June 2000. (Id. at 383.) These contradictory dates have an obscuring effect on her earnings argument, because whether employment amounts to substantial gainful activity turns on whether the average monthly earnings exceed the SSA's SGA Earnings Guidelines. 20 C.F.R. § 404.1574(b); SSR 83-35, 1983 WL 31257, at *1.

Curiously, in its response brief the government acknowledges Wiggins's substantial gainful activity argument but makes no effort to refute it or to weigh in on whether her earnings reached the qualifying monthly average. (R. 24, Govt.'s Br. at 4.) The government appears to concede that the SGA Earnings Guidelines establish that in 1999 and 2000 an average of $700 per month qualified as substantial gainful activity. *See* http://www.ssa.gov/oact/cola/sga.html (last visited May 13, 2015). Nor does it appear to dispute that Wiggins earned a total of $3,919.73 through her telemarketing work in 1999 and 2000. Thus if Wiggins worked less than six months, her average monthly earnings exceeded the SGA threshold. If she worked six months or more, her earnings fell short of the SGA threshold. Wiggins never resolved the duration question at the hearing or in her brief to this court, even though the regulations make clear that when an ALJ considers a claimant's past work she "must tell us the dates" that she worked. 20 C.F.R. § 404.1565(b). Accordingly, and without any input from the government, the court is left to grapple with the tension between the rule giving Wiggins the burden of proof at step four, *see Knight*, 55 F.3d at 313, and the mandate that the ALJ

make factual findings to support his step-four conclusion, *see Getch*, 539 F.3d at 480.

At the hearing, it was apparent that there was a question whether Wiggins earned enough as a telemarketer to have that position qualify as substantial gainful activity. The VE questioned Wiggins regarding the dates she worked, but she was unable to pinpoint them with any precision, stating that she "started in 1999 and I ended in May, I think it was." (Id. at 67.) The VE told the ALJ he was trying to determine whether the ALJ could consider that job as substantial gainful activity, so the ALJ asked Wiggins how much money she made as a telemarketer. (Id.) She testified that she made between $500 and $1,000 per month, depending on commission. (Id. at 68.) Neither the VE nor the ALJ asked any additional questions to clarify the dates she worked or the amount she earned. And despite the VE highlighting for the ALJ that the telemarketer position might not have risen to the level of substantial gainful activity, in his decision the ALJ did not make any factual findings to resolve the duration and earnings questions that were fundamental to the job's qualifications as past relevant work. (Id. at 25.) Instead, the ALJ took for granted that the telemarketer job meets the criteria for past relevant work without providing any explanation to support his conclusion, despite the factual issues openly discussed at the hearing.

Although it is true that Wiggins carries the burden of proof at stage four, here she presented some evidence that her earnings did not amount to substantial gainful activity, and the ALJ never addressed that evidence or explained why he

rejected it. The relevant regulation makes clear that it is up to the ALJ to gather the information necessary to make a determination with respect to the claimant's past relevant work. 20 C.F.R. § 404.1560(b)(2). The agency has specified that "every effort must be made to secure evidence that resolves" the issue whether a claimant retains the RFC to perform past work "as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386, at *3 (1982). Where an ALJ concludes that the claimant can return to her past relevant work, the rationale for the decision "must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.* at *4. Here, the ALJ was made aware that Wiggins's work as a telemarketer may not have risen to substantial gainful activity, but nonetheless concluded that it does, without explaining why. There is no picture here, let alone a clear one, *see id.*, to explain the ALJ's conclusion that the telemarketer job can be included among Wiggins's past relevant work. Because the ALJ's decision does not convey the necessary factual findings to allow the court to review the ALJ's conclusion that Wiggins's telemarketer job qualifies as past relevant work, the case must be remanded for further proceedings with respect to this question as well. *See Getch*, 539 F.3d at 480.

In the interest of completeness, the court will also address Wiggins's alternative argument that even if she worked less than six months (meaning that her telemarketer earnings amounted to substantial gainful activity), the telemarketer job does not qualify as past relevant work at step four because it

amounted to an unsuccessful work attempt. Past employment may constitute an unsuccessful work attempt where a claimant is forced to stop working after a short time because of her impairment. 20 C.F.R. § 404.1574(a)(1). If the claimant stayed in a job for more than six months, that employment is not considered an unsuccessful work attempt regardless of the reason the job ended. SSR 84-25, 1984 WL 49799, at *3 (1984). But where the work lasted six months or less, the ALJ will look to information beyond that provided by the worker to determine why the work effort ended. *Id.*

The conflicting evidence regarding the dates Wiggins worked impacts her argument that the telemarketer position was an unsuccessful work attempt because if, on the one hand, her co-worker is correct and she worked for more than six months as a telemarketer, then by definition that job does not qualify as an unsuccessful work attempt. *Id.* But if, on the other hand, Wiggins's testimony is correct and she worked for less than six months, then whether the job was an unsuccessful work attempt turns on whether she was fired because of her impairment. *See* 20 C.F.R. § 404.1574(a)(1). When the ALJ asked her directly why she was fired from the telemarketer position, Wiggins said nothing about her back pain, stating only that she was unable to meet her quotas. (A.R. 68.) The only evidence she submitted suggesting that her impairment had anything to do with her termination was the letter in which a former co-worker wrote that during a period in which Wiggins's performance was evaluated, "it was found that Mrs. Wiggins couldn't sit for long periods of time along with not being able to meet the

sales quota required." (Id. at 383.)  The ALJ considered this letter but found it unpersuasive because Wiggins herself said nothing about her back pain preventing her from meeting her sales quota and because Wiggins's description of her daily activities involved mostly sitting, including attending church three or four times a week.  (Id. at 24.)  The ALJ found that the co-worker's letter was inconsistent with Wiggins's own description of her sedentary activities.  (Id.)  Because those reasons are supported by the evidence, and because this court's "light judicial review" of the ALJ's decision does not include reweighing that evidence, *see Smith*, 388 F.3d at 253; *Moore*, 743 F.3d at 1121, Wiggins's inconsistency regarding the dates and circumstances of her telemarketer employment is insufficient to show that her employment amounted to an unsuccessful work attempt.  Accordingly, with respect to the telemarketer position, on remand the ALJ only needs to address the question whether Wiggins's earnings rose to the level of substantial gainful activity.

## Conclusion

For the foregoing reasons, Wiggins's motion for summary judgment is granted and the Commissioner's is denied.  The case is remanded for further proceedings consistent with this opinion.

**ENTER:**


_____
**Young B. Kim**
**United States Magistrate Judge**

23